David B. Gordon (DG 0010)
Schoeman, Updike & Kaufman, LLP
60 East 42nd Street
New York, New York 10165
(212) 661-5030
Attorneys for Plaintiff Litchfield Capital, LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



------------------------------------------------------------ X
LITCHFIELD CAPITAL, LLC,

      Plaintiff,

 vs.

BNY CLEARING SERVICES LLC and PERSHING
LLC, as successor to BNY CLEARING SERVICES
LLC,

      Defendants.
------------------------------------------------------------ X

JUDGE HOLWELL
**05 CV 3218**

COMPLAINT

Plaintiff Litchfield Capital, LLC ("Litchfield"), by its attorneys, Schoeman, Updike & Kaufman, LLP, for its complaint alleges:

### NATURE OF THE ACTION

1. This action arises out of the failure of defendant BNY Clearing Services LLC ("BNY") to safeguard bonds and funds owned by Litchfield, with a value in excess of $5 million, that were in the custody of BNY. BNY disregarded Litchfield's instructions for the transfer of the bonds and funds. Subsequently, BNY allowed a third party to abscond with them. That third party is no longer in

business. As a result of BNY's misconduct, Litchfield has suffered millions of dollars of losses.

## PARTIES

2. Litchfield is, and at all relevant times was, an Arizona corporation with its principal place of business located at 4647 N. 32nd Street, Suite 201, Phoenix, Arizona. Litchfield is in the business of, inter alia, making investments for profit.

3. BNY Clearing Services LLC ("BNY") is, and at all relevant times was, a Delaware limited liability company with its principal place of business located at 1633 Broadway, New York, New York. BNY's business included serving as the custodian of funds and securities in connection with transactions involving companies in the securities industry.

4. Pershing LLC ("Pershing") is, and at all relevant times was, a Delaware limited liability company with its principal place of business located at 1633 Broadway, New York, New York. Pershing is the successor in interest to BNY. BNY and Pershing may be referred to collectively hereinafter as "defendants."

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a), because the amount in controversy between the parties exceeds $75,000, exclusive of interest and costs, and is between a citizen of Arizona and citizens of other States.

6.  Venue is proper in this district pursuant to 28 U.S.C. §1391(a)(1) and (2) because defendants reside in this District for purposes of venue and a substantial part of the events or omissions giving rise to Litchfield's claims occurred in this District.

## FACTUAL BACKGROUND

7.  BNY provided certain financial services to A.B. Watley, Inc. ("Watley"), for which Watley compensated BNY.

8.  In connection with a transaction between Litchfield and Watley, Litchfield, Watley and BNY agreed that BNY would serve as the custodian of certain securities and funds.

9.  As part of that transaction, Litchfield deposited government bonds with an aggregate value of $5 million (the "Bonds") in BNY Account No. 4980-2832, entitled "A.B. Watley, Inc. SDN Collateral Account, FBO Litchfield Capital, LLC" (the "Account").

10. The signature card for the Account bore two names, Karl Huish ("Huish") of Litchfield and Craig Feltz ("Feltz") of Watley.

11. Feltz gave a Limited Power of Attorney (the "LPOA") to Huish, which provided in pertinent part:

> I give and grant unto my said attorney in fact full power and authority [to] act in [his] name for the sole purpose of signing on the Account, including transferring assets out of the Account to any bank or brokerage account so designated by [Mr. Huish]...

> \*       \*       \*       \*       \*

3

>BNY Clearing Services, LLC, and any affiliate thereof to which this power of attorney hereof is presented is authorized to honor and give effect to all instruments signed pursuant to the foregoing authority without inquiring as to the circumstances of their issuance or the disposition of the property delivered pursuant thereto.

12. The Chief Executive Officer of Watley, John J. Amore ("Amore"), confirmed in writing that: (1) the LPOA "was approved by [Watley], and that Craig T. Feltz ha[d] properly executed the LPOA under [his] direction;" (2) Watley was "bound by the LPOA, and covenant;" and (3) Watley would not "seek to (a) invalidate the LPOA or (b) remove Craig T. Feltz as signer on the referenced Account, without the approval of Litchfield Capital, LLC."

13. Before Litchfield transferred the Bonds to the Account, BNY received and reviewed copies of the LPOA and the written confirmation signed by Amore, and advised Litchfield that it had approved and would honor the LPOA.

14. Litchfield and BNY then entered into an agreement (hereinafter, the "BNY Agreement"), pursuant to which Litchfield transferred the Bonds to the Account and BNY agreed that it would: (a) comply with any instruction given by Huish alone for the transfer of the contents of the Account, in whole or in part, from the Account; and (b) not permit the removal of the contents of the Account, in whole or in part, from the Account unless BNY first received written authorization for the transfer from Huish.

15. On March 26, 2003, Huish gave BNY an express written instruction to transfer a portion of the Bonds from BNY to a Global Trading, Inc. account located at Penson Financial Services. On March 27, 2003, Huish gave BNY a second

4

express written instruction, this time requesting the transfer of the balance of the Bonds from BNY to the same Global Trading, Inc. account at Penson Financial Services. In breach of the BNY Agreement, BNY refused to comply with Huish's March 26, 2003 and March 27, 2003 instructions and did not transfer the Bonds.

16. Subsequently, BNY permitted the release of the entire contents of the Account -- the Bonds and interest paid thereon -- to, upon information and belief, Watley. BNY did not obtain Huish's consent before allowing the Bonds and funds in the Account to be removed from the Account. BNY's failure to obtain such consent constituted a breach of the BNY Agreement.

17. Watley is no longer in business.

### FIRST CAUSE OF ACTION
### (Breach of Contract)

18. Litchfield repeats and realleges the allegations contained in paragraphs 1 through 17 above.

19. Litchfield and BNY are parties to the BNY Agreement.

20. As explained in paragraphs 14, 15 and 16 above, BNY has breached the BNY Agreement.

21. Litchfield has fulfilled all of its obligations that have arisen under the BNY Agreement.

22. As a direct and proximate result of BNY's breach of the BNY Agreement, Litchfield has suffered damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Promissory Estoppel)

23.     Litchfield repeats and realleges the allegations contained in paragraphs 1 through 22 above.

24.     In the event that defendants now deny the existence or enforceability of the BNY Agreement, Litchfield alleges in the alternative that BNY promised Litchfield that it would: (a) honor any instruction given by Huish alone for the transfer of the contents of the Account, in whole or in part, from the Account; and (b) not permit the removal of the contents of the Account, in whole or in part, from the Account unless BNY first received written authorization for the transfer from Huish.

25.     Litchfield reasonably and foreseeably relied on the foregoing promises made by BNY.

26.     As a direct and proximate result of such reliance, Litchfield has suffered an unconscionable injury.

27.     BNY's failure to honor its promises has resulted in injustice to Litchfield.

## THIRD CAUSE OF ACTION
### (Negligent Misrepresentation)

28.     Litchfield repeats and realleges the allegations contained in paragraphs 1 through 27 above.

29.     If defendants now deny the existence or enforceability of the BNY Agreement, Litchfield alleges in the alternative that, in December 2002, on multiple

6

occasions, Seth Gerber of BNY spoke to Huish, by telephone, concerning the circumstances under which any of the contents of the Account could leave the Account. Gerber, on behalf of BNY: (a) stated that arrangements were in place so that BNY's employees had to honor any instruction given by Huish for a transfer from the Account of any or all of its contents; (b) stated that arrangements were in place so that BNY could not permit any transfer from the Account without Huish's written approval; (c) promised that BNY would honor any instruction given by Huish for a transfer from the Account; and (d) promised not to permit any transfer from the Account without Huish's written approval.

30. BNY's business included, <u>inter alia</u>, serving as custodian of securities and funds in connection with securities transactions.

31. Based on the above, BNY held or appeared to hold unique or special expertise regarding the circumstances under which it could and would release any or all of the contents of the Account; BNY knew that Litchfield was using the information that BNY imparted in deciding whether to forward the Bonds to the Account and supplied it for that purpose; and, therefore, BNY had a special relationship with Litchfield such that it had a duty to use reasonable care to impart to Litchfield correct information.

32. The foregoing statements made by BNY were false because the arrangements that BNY stated were in place were not in fact there, and BNY made the foregoing promises with the intention at the time it made them not to honor them. In the course of its business, therefore, BNY provided false information to

7

Litchfield for Litchfield's guidance that BNY should have known was incorrect. BNY failed to exercise reasonable care in communicating information to Litchfield.

33. BNY knew that the information that it was supplying to Litchfield was desired by Litchfield for a serious purpose and BNY supplied the information to Litchfield for that purpose. Litchfield intended to, and did, rely and act upon the information that BNY provided.

34. Litchfield reasonably, justifiably and foreseeably relied and acted upon the information that it received from BNY in deciding to transfer the Bonds to the Account, to its detriment and damage.

35. The misconduct of BNY was willful, malicious, wanton, gross and egregious. BNY engaged in aggravated and outrageous conduct with an evil mind.

## FOURTH CAUSE OF ACTION
### (Negligent Misrepresentation)

36. Litchfield repeats and realleges the allegations contained in paragraphs 1 through 35 above.

37. BNY's business included, inter alia, serving as custodian of securities and funds in connection with securities transactions. Before the transfer of the Bonds to the Account, Gerber and BNY knew that BNY had: (a) not put in place arrangements to ensure that it had to honor any instruction given by Huish for a transfer from the Account of any or all of the Account's contents; (b) not put in place arrangements to prevent a transfer from the Account without Huish's written approval; (c) plans not to honor an instruction given by Huish for a transfer from the Account; and (d) plans to permit a transfer from the Account without Huish's

8